[No. 18366. Department One. May 6, 1924.]

ARCHIE BACON, *Respondent*, v. EVA BACON, *Appellant*.[1]

DIVORCE (50-1)—DECREE—RES JUDICATA—SUBSEQUENT MISCONDUCT —BURDEN OF PROOF—EVIDENCE—SUFFICIENCY. A husband is not entitled to a divorce under Rem. Comp. Stat., § 982, subdiv. 8, providing that a divorce may be granted to either party in all cases where they have lived separate and apart for a period of five consecutive years, where the wife sets up in defense a decree of a sister state awarding a separation and separate maintenance on account of the husband's abandonment, and the husband fails to establish misconduct on the part of the wife since the separation decree.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered July 19, 1923, upon findings in favor of the plaintiff, in an action for divorce, tried to the court. Reversed.

*F. N. Prout* and *W. C. Brown*, for appellant.

*P. D. Smith*, for respondent.

TOLMAN, J.—This is a divorce action in which the trial court granted a divorce to the plaintiff, and the defendant has appealed.

The parties were married in Nebraska in 1915, and lived together a little less than one year, when a separation occurred which has continued ever since. Shortly after the separation, the wife began an action in the district court for Richardson county, Nebraska, for separate maintenance. Issues were joined and the

[1]Reported in 225 Pac. 403.

cause was tried on the merits, resulting in a decree being entered in March, 1917, in which it is recited that the husband had abandoned the wife without just cause, and refused further to live with her, and it is adjudged that the parties be permitted to live separate and apart from each other, and that the husband pay to the wife $20 per month for her support. This decree has never been modified or reversed and is still in full force and effect.

Respondent filed his complaint in the present action on September 26, 1922, more than five years after the entry of the decree in the Nebraska case, and of course still longer after the separation began. He alleges such separation for the statutory period, and prays for a decree under subd. 8 of § 982 of Rem. Comp. Stat. [P. C. § 7501], which provides in effect that a divorce may be granted to either or both parties in all cases where they have or shall live separate and apart for a period of five consecutive years or more.

Appellant, by her answer, pleaded the Nebraska decree as entitled to full faith and credit under § 1, Art. IV, of the Federal constitution, and therefore *res judicata* of the matters alleged in the complaint, under the rule announced in *Harding v. Harding,* 198 U. S. 317. The respondent, at the trial, apparently recognized the force of this defense and sought leave, which was granted, to amend his complaint so as to show that, after the entry of the Nebraska decree, he, in good faith, sought a reconciliation with his wife, which she wrongfully refused, thereby changing the conditions existing when the Nebraska decree was entered, and giving him ground for divorce as the injured party, under the rule announced in *Pierce v. Pierce,* 120 Wash. 411, 208 Pac. 49, so that while the Nebraska decree might be *res judicata* as to the matters occur-

ring up to that time, yet, under the authority of *Apple-ton v. Appleton*, 97 Wash. 199, 166 Pac. 61, and 107 Wash. 280, 181 Pac. 861, it would not be so as to subsequent misconduct. No formal amendment to the complaint was made, but evidence was received on that issue and the complaint will be considered as amended accordingly. The question then is, was there subsequent misconduct on the part of the wife?

The burden of proof was on the husband to establish such misconduct, and the record reveals the following facts, which he relies upon for that purpose:

The husband testified that, in June following the entry of the Nebraska decree, he went from his home, a distance of some twelve or fifteen miles, to the place where his wife was staying with her sister, for the purpose of seeking a reconciliation; that he went to the door, rapped, and when she answered his summons he said, to quote his testimony: "We might just as well cut out this foolishness and go to living together." And, according to his version, she answered in effect that if that was all he had come for he might as well go back, and closed the door in his face, thus ending the interview. The wife absolutely denies that any such call upon her occurred, or that she saw her husband at all at or about that time. She testified that she was with her sister only for a day or two, a week-end or something like that, and that her husband did not appear, nor did she see him while she was then visiting her sister, and claims that she had no communication from him then or for a long time afterwards. Since the burden of proof is upon the husband, we cannot hold that this interview occurred.

According to the record, the next effort put forth, if it can be so called, consisted of a letter written by the husband and mailed to the wife, dated October 31,

1920, which starts out with the sentence: "Will write you a few lines today. I want to know if we cant come to an agreement and one or the other get a divorce."

The letter then proceeds to express the writer's desire for his freedom from the matrimonial yoke, and continues:

"You had ought to know by this time that I will never live with you any more, so what is the use of us being tied together. I dont wish to hurt your feelings but just to be frank with you I will say, I would never live with you even if we both lived to be 100 years old. You seem to be after money and why dont you set a price and get a divorce or let me get one. . . . I know you dont care anything about me and I am sure I dont care for you and never did. I know now what you were after, but I did not die as I was expected to."

Nor is there anything in the context to soften these expressions. To this letter the wife replied, saying in effect that she thought neither of them had any legal ground or cause for a divorce, and as for herself, she had no desire for a divorce.

The next step in the so-called campaign for reconciliation was in December, 1920, following the exchange of letters just referred to, when the husband, according to his testimony, called at a hospital in Lincoln, Nebraska, where the wife was taking training as a nurse, for the purpose of personally seeking a reconciliation; that he found the wife busy assisting in an operation, and had time to tell her only that he wanted to fix matters up so that they could again live together, when she explained that she was busy and could not then talk to him, and asked him to return later in the day. This he did, but on his return the wife did not see him personally, but by another nurse sent down to him, where he was waiting, a note or letter in which she said that there was no need of her seeing him, that if he had come to talk about a reconciliation he might

as well go back home and stay there; that she was satisfied with things as they were, and if he was not satisfied he could do the next best thing. The wife, on the other hand, claims to have kept a copy of the note then sent to her husband, which reads:

"3 P. M. Dec. 11, 1920.

"Sorry if you are disappointed. I cant see you: and you dislike scenes and sentiment. Please write me anything you wish to say. You know this is a hard busy work and requires nerve and all ones attention given to the work being done. Unless we are careful we may be the cause of some poor one suffering unnecessarily or dying. Please don't make it any harder for me: than at present.

"In a year from now I will have finished and be through with class and study. Won't you please wait till then and I will talk to you and I can think. I feel now as I have always. I fear it would be unpleasant to see you and try to talk.

"I am sincerely, Eva."

There is considerable dispute in the testimony as to whether this is a correct copy of the note actually sent to and received by the husband, but whether it be so or not, and if it be conceded that the message was as contended for by the husband, still, in the light of his letter of six weeks before, from which we have just quoted, we can hardly hold that an honest, sincere offer of reconciliation was made and rejected. There seems to have been no direct communication between the parties after this occasion. It does appear that the husband requested a mutual friend to see his wife in his behalf, but the friend never executed the mission, and if any offer or message was intended to reach the wife through that source, the wife never knew it. The only other communication between the parties shown by the record was an attempt to reach her through one of the attorneys who represented her in obtaining the

Nebraska decree. The husband, in December, 1920, left Nebraska, moving to this state. Before he left Nebraska, he saw and talked with this attorney, and later wrote him a letter or two, as a result of which the attorney saw the wife. What occurred is very much in dispute.

According to the evidence of the attorney, he performed the mission as requested, and informed the wife that the husband sought a reconciliation, but, according to the wife, the attorney's communication consisted of communicating threats as to what the husband would do, and a more or less direct attempt to buy her consent to a divorce. In all of this there seems to be entirely lacking the first and most fundamental thing to be put forth in an honest *bona fide* attempt to procure a reconciliation. We find nowhere any admission by the husband, or on his behalf, that he had been in any sense in the wrong, or any promise of amendment and better conduct in the future, in the event that the wife should accede to his request to resume marital relations with him. It would seem obvious that any man seeking reconciliation with a woman, and more especially a woman who, according to the solemn decree of a court, had been wronged by him, would naturally assume, at least in part, the blame for the original separation, express regret therefor, and promise better conduct on his part in the future as a basis for forgiveness and resumption of marital relations. The want of anything of this kind, together with the uncompromising statements contained in the husband's letter of October 31, 1920, from which we have quoted, convinces us that he has not sustained the burden of proof necessary to establish subsequent misconduct on the part of the wife and entitle him to a divorce.

It may be quite true, as suggested by the trial court in his opinion, that these parties can no longer live together, and in reason they ought no longer to be bound together. It seems entirely probable that, having lived together as husband and wife less than a year, and since having been separated for nearly eight years, with litigation in two states to add to their estrangement, the hope of a future reconciliation is but shadowy, and to paraphrase, what God has put asunder the law ought not to bind together; yet, notwithstanding there is no hope of reconciliation here, and the legal ties may prove galling and burdensome to one of the parties at least, still a proper rule must be laid down for guidance in other cases, even though these parties, or one of them, may suffer thereby, and hence we do not hesitate to hold that the husband has failed to establish misconduct on the part of the wife subsequent to the Nebraska decree. Therefore the judgment appealed from is reversed, and the cause remanded with instructions to dismiss the action.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.